Mi'chelle A. Barnes, *ProSe*
139 Sierra Heights Street
Soldotna, AK 99669-7868



RECEIVED

AUG 30 2016

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

Mi'chelle A. Barnes, ProSe
      Plaintiff,
   vs.

John Combs
John's Alaska Railroad Web Page
AKA www.alaskarails.org

Michael Ferguson
      Defendants(s)

CASE No.: 3:16-cv-00196-RRB

**Jury Trial:** Yes

## COMPLAINT FOR COPYRIGHT INFRINGEMENT AND

## DEMAND FOR A JURY TRIAL

Plaintiff, Mi'chelle A. Barnes, comes now to submit her Complaint against Defendants,

JOHN COMBS, owner and sole operator of John's Alaska Railroad Web Page Website aka

Alaskarails.org and MICHAEL FERGUSON aka Mike Ferguson (collectively referred to as

"Defendants"), alleges as set forth below.

### PARTIES

1) Plaintiff is a professional freelance photographer (1988-present) with world-wide

publications and national and international exhibitions to her credit. Plaintiff resides at 139 Sierra

Heights Street, Soldotna, AK, USA.

2) On information and belief, John Combs is the sole webmaster and owner of John's Alaska Railroad Web Page aka www.Alaskarails.org and resides at: 6093 Rose Tree Lane, Brooksville, OH 45039. Combs is an Electrician and a photographer.

3) On information and belief, Michael Ferguson is a "railfan" participant of Alaskarails.org Website; a contributor to the Website and a photographer. Ferguson resides at: 12624 North Florida Street, Mead, WA 99021. Ferguson is a former Alaska Railroad employee (ARRC).

3) On information and belief, John's Alaska Railroad Web Page aka Alaskarails.org, is a non-profit organization dedicated to posting "railfan" memorabilia material. The Website does not employ Combs. Alaskarails.org is not an academic non-profit educational institution. Alaskarails.org contains "*true stories*" from railfan participants and pictures submitted from railfans as well as other copyrighted intellectual property. The Website records *some* Alaska Railroad events as well as that of other railroads.

## NATURE OF CLAIM, JURISDICTION AND VENUE

4) This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. §§101, et seq. Jurisdiction is founded on 28 U.S.C §§1331 and 1350(a); 17 U.S.C§501, et seq., Section 106 of the Copyright Act of 1976, Title 17 of the United States Code, the Digital Millennium Copyright Act (DMCA); the Berne Convention and the statutes and laws of the State of Alaska.

5) This Court has personal jurisdiction over the Plaintiff by virtue of her presence in this District.

6) This Court has jurisdiction over the Defendants by virtue that they are citizens of the United States of America, as well as they're transacting, doing, and soliciting business in this District. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (c) and 1400(a).

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 2 of 29

## JURY DEMAND

7) Plaintiff demands a trial by jury on all of its claims for relief.

## INTRODUCTORY STATEMENT

8) This is an action for copyright infringement in violation of the Federal Copyright Act of 1976, as amended 17 U.S.C. §§101, et seq. 17 U.S.C§501, et seq., Section 106, the Digital Millennium Copyright Act; the Berne Convention and the statutes and laws of the State of Alaska arising from the coping, scanning and posting of the copyrighted intellectual work entitled, "Stand Off," Moose v Alaska Railroad, Copyright Registration Number VA 1-430-666, effective 08 January 2001, to the world-wide web. The unauthorized use commenced by Alaskarails.org on **22 May 2000 – 7 July 2013 at 12:53 p.m. (13 Years Total).** "Stand Off" was posted on 22 May 2000 without prior written license, authorization, copyright notice, correct photo attribution and correct copyright management information which led to the piracy by another third party who copied "Stand Off" aka "Moose of the tracks," from the Alaskarails.org Website and used it for commercial gain, Case No.: 3:12-cv-00095 SLG.

## OPERATIVE FACTS

**9) Background:** The Plaintiff photographed, edited, designed, produced and marketed a Made In Alaska product line beginning in 1993. The products included 80 different postcards, 12 different note cards, posters, a CD calendar, a notepad, 16 different magnets, 80 different ceramic art tiles and Cibachrome fine art prints. **(Exhibit 1)**

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 3 of 29

10) The Plaintiff is the photographer and creator of "Stand Off" and has complied in all

respects with the Copyright Act of 1976, 17 U.S.C. § 101, et seq., as amended, and all other laws and regulations governing copyrights. Plaintiff secured the exclusive rights and privileges in and to the copyright for "Stand Off." The Register of Copyrights for the U.S. Copyright Office issued the Plaintiff a Certificate of Registration for "Stand Off", VA 1-430-666, and effective 08 January 2001. During legal action in Case No.: 3:12-cv-00095 

SLG for copyright infringement, the Plaintiff learned from one of the Defendants, Gary Olson, "Stand Off" was on the Internet. (**Exhibit 4**)

11) On information and belief, by and through the voluntary written e-mailed statements from the defendants to the Plaintiff, she learned Ferguson bought a horizontal postcard entitled, "Stand Off" while working in Denali National Park. Ferguson later became an Alaska Railroad Corporation (ARRC) Employee, a BNSF Conductor and a photographer. Ferguson scanned the postcard of "Stand Off" which carried the Plaintiff's copyright notice, photo attribution and contact information on the back of the postcard, without prior written license or authorization and e-mailed the pirated photograph to Combs for post. The backside of the postcard stated: "© Mi'chelle A. Barnes," copyright notice, proper photo credit attribution, along with contact information. Ferguson reproduced and prepared an electronic derivative work of "Stand Off" and e-mailed it to Combs for display on Alaskarails.org Website because Ferguson was a regular contributor to Alaskarails.org and a railfan participant. Ferguson induced, caused, or materially contributed to the copyright infringement. (**Exhibits 1, 2 & 3**)

12) On information and belief, Combs owns, solely controls and operates the Website through which participants contribute material for post. Combs received Ferguson's e-mail and posted "Stand Off" to the Alaskarails.org Website in or about 22 May 2000, on the "2000 Pictures of the Week" web page without vetting copyright ownership and registration first. "Stand Off" was later pirated from the Alaskarails.org Website and used for commercial gain in Case No.: 3:12-cv-00095 SLG.

What is liability infringement? One who [reproduces] [prepares derivative works from] [distributes] [performs] displays] a copyrighted work without authority from the copyright owner during the term of the copyright and infringes the copyright.

[Copyright may also be infringed by [vicariously infringing] [and] [contributorily infringing].]

What is vicarious infringement? [A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and the right [*and ability to supervise the infringing activity, whether or not the person knew of the infringement].]*

What is "contributory infringement?" Contributory infringement is *[A person is liable for copyright infringement by another if the person knowns or should have known of the infringing activity and [induces] [causes] [or] [materially contributes to] the activity.]*

### E-MAILED STATEMENT FROM MICHAEL FERGUSON

Ferguson's voluntary e-mail statement dated Sunday, 21 July 2013 at 9:57 p.m. **(Exhibit 3)**

13) "I bought the postcard at the Denali railroad depot when I was 17 years old and thought it was an awesome picture so I scanned it into my computer and sent it to John Combs. John posted it as the picture of the week, with no profit intended and I was never contacted by a Mr. Gary Olson for permission to use any picture. To my knowledge John Combs was not contacted either

*as he would have contacted me to get my permission*. It was intended to be used as a Historical picture for the alaskarails.org Website, this Website is better known as John's Alaska Railroad web page. I emailed the picture to John Combs, he thought I was the photographer since there was no signature on the actual photo. The intended educational purpose was the Alaska Railroad history and how the moose use the tracks as easier passage to get where they want to go. Mike Ferguson." **(Exhibit 3)**

14) On information and belief, Ferguson's statement shows that he copied and reproduced "Stand Off", and electronically distributed it to Combs for post, then Combs posted "Stand Off" on display on the Alaskarails.org Website thereby infringing the Plaintiff's copyrighted work for 13 years. Combs had the ability and responsibility as owner and webmaster to "vet" "Stand Off" prior to posting it. Combs knew or should have known he was posting copyrighted intellectual property and as such, must have prior written permission, license and authorization to post it. Combs failed to act as a normal and prudent person would to "vet" the photograph thereby vicariously infringing Plaintiff's copyrighted work. Combs had the "ability to supervise the infringing activity," because Combs is the sole webmaster and has total control over all material and content on the Website. Combs didn't know for sure if Ferguson was the creator and copyright owner of "Stand Off," he assumed Ferguson was. Combs failed to conduct due diligence and vet "Stand Off" by contacting Ferguson upon receipt of the e-mail before Combs posted "Stand Off."

A remarkable piece of evidence which undisputedly shows that both defendants knew the Copyright Act but FAILED to do their due diligence and exercise a Duty of Care like any reasonable person would have, is contained in Ferguson's voluntary statement from Ferguson to the Plaintiff. Ferguson stated, *"... he would have contacted me to get my permission*."

Ferguson's statement said, "… that Olson didn't contact him to use "Stand Off" nor Combs because Ferguson says, "…*to my knowledge John Combs was not contacted either as he would have contacted me to get my permission." By "permission," Ferguson means permission to use and/or post Ferguson's pictures prior to use.* Ferguson is a photographer and a regular contributor to Alaskarails.org as a "railfan" participant too. Ferguson's photographs appear with copyright notice and photo attribution. **(Exhibit 3 and Exhibit 6)**

15) On information and belief, **Exhibits 6 and 7** are photographs taken by both defendants on the Website. The Defendants *expect* "to be contacted" *before* their pictures and/or Website content is used to license and authorize it but neither protect the copyrighted intellectual property and work products of others with the same regard or follow the law. Combs NEVER FAILED to post photographs taken by Ferguson and himself (Combs) that contain *"© John Combs and © Mike Ferguson"* copyright notice and photo attribution of the photographer.

16) On information and belief, Ferguson's statement shows that both Ferguson and Combs KNEW they had to have prior written license and authorization from the creator of the Copyrighted Intellectual Property BEFORE IT IS USED. **(Exhibit 3)**

17) The Plaintiff learned from Gary Olson, a defendant named in Case No.: 3:12-cv-00095 SLG that he saw and pirated "Stand Off" from the Alaskarails.org Website.

18) Counsel for the defendants stated in his Answer to the Court in Document #57 page 3 of 7. Mr. Middleton, Esquire stated, "Mr. Olson and consequently AMF, obtained the picture from a Website that featured pictures available to anyone. On the Website the picture was present without attribution, or notice that it was copyrighted, and further it was named something else." **(Exhibit 2)**

19) **Exhibit 2** shows that "Stand Off" appeared on the Alaskarails.org Website, on "**2000 Pictures of the Week**". On 22 May 2000, Combs incorrectly listed Ferguson as the photographer and changed the title to of the photograph to, "Moose of the tracks." Combs made a hyperlink under the word "Moose" and when a participant clicked on the hyperlink, "Stand Off" aka "Moose of the tracks," appeared with:



Post from Alaskarails.org

- NO copyright notice
- NO photo attribution on the webpage that posted "Stand Off"
- Improper photo attribution on the web page with the hyperlink that launched and uploaded "Stand Off" crediting Michael aka Mike Ferguson as the photographer and creator.
- Digitally altered and manipulated the photograph from the original photograph during the scan to reproduce it causing black edging around the photograph, producing a derivative work in violation of the Digital Millennium Copyright Act.

20) The Defendants mismanaged and deleted the copyright management information on the back of the postcard in violation of the Digital Millennium Copyright Act on the backside of the postcard. **(Exhibits 1 and 2)**

21) The defendants in Case No.: 3:12-cv-00095-SLG copied, posted and used, "the heart of the work," in "Stand Off" because Olson used Ferguson's reproduction of the horizontal postcard entitled "Stand Off" that he purchased, copied and sent to Combs for post. The

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 8 of 29

Defendants in this case are not, and have never been licensed or authorized to reproduce or display "Stand Off" in any way and/or on the Alaskarails.org Website. **(Exhibit 12)**

22) The evidence shows that the Defendants knew or should have known what the Federal Copyright Act of 1976 is because Combs posted a Copyright Notice disclosure *on the Home page* of the Website to Alaskarail.org participants. Please see **(Exhibit 2).**

23) The copyright disclosure on the Home page of the Alaskarails.org Website invoked protection for the copyrighted material on the Website. The disclosure does NOT substitute or absolve the webmaster and participants from obtaining prior written permission and license from the copyright holder before using material in any way and following the laws.

Under the Digital Millennium Copyright Act, the webmaster and participants MUST ensure they have written permission and license from the copyright holder(s). Here is the full text of copyright notice disclosure on Alaskarails.org Website **"BEFORE"** the Plaintiff contacted Combs about the unauthorized use of "Stand Off." *"The Alaska Railroad Logo is copyrighted and used with permission from the Alaska Railroad Corporation. All photos and graphics on the web site are protected Intellectual property.* Thanks to Ed Timko for this page's banner photograph (and for updating the logo!). © 1997 – 2013 John Combs unless otherwise noted. the end."

**"AFTER CONTACT"** Combs changed the Home page disclosure to say: "The Alaska Railroad Logo is copyrighted and used with permission from the Alaska Railroad Corporation. All photos and graphics on this web site are protected intellectual property. **This is not a photo sharing or information sharing website.** Any and all images and info contained in this website belongs to the creator and copyright holder. Discrepancies should be reported to the webmaster

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 9 of 29

immediately for correction or removal. Thanks to Ed Timko for this page's banner image (and for updating the logo!)" (**Exhibit 2**)

24) On information and belief, a second postcard copyright violation on the Website. The "2005 Pictures of the Week" features another postcard pirated, copied, and posted without proper photo attribution, license and copyright notice on 11/14/2005 of an aerial view of Seward, Alaska following the 1964 earthquake. **Combs listed the**  **photographer as, "*Unknown,*"** "11/14 Photographer *Unknown*, Description: The entire ARR dock, terminal warehouse, station and yard was wiped out by tsunami and earthquake." http://www.alaskarails.org/potw-archive/2005/UK-seward.jpg (**Exhibit 5**)

26) On information and belief, in addition to the copyright infringement by the defendants in this case, **Exhibit 5, contains additional 49 examples of photographs where Combs lists photographers as, "*Unknown, Unverified, ??? and anonymous*"** from 1997-August 2016 on the Website but posted them anyway. The photographs are posted without copyright notice, prior written license and proper photo attribution, this shows a reckless and willful disregard for the law and the copyrighted intellectual property of others.

27) On information and belief, Combs posted photographs without license; photo attribution or copyright notice from his "Collection" too. Photographers are listed as, "Unknown, Unverified, ??? and anonymous." Under the Digital Millennium Copyright Act, only the copyright owner can license, convey or transfer rights of the photograph in writing. If you don't know who the photographer is, you definitely don't have license to post copyrighted intellectual work. Combs

knew his actions could cause adverse impact to the copyright owner(s) but willfully posted copyrighted work repeatedly. (**Exhibits 1, 5, 6, and 7**)

28) On information and belief, on 10/12/09, Combs posted a photograph without copyright notice, photo attribution and license from a slide he purchased on eBay. Combs stated in his post: "I must confess that I spend a fair amount of money shopping for Alaska Railroad items on eBay. Part of my pleasure is snagging items that I know will add to the *historical assets* of this Website. Below is one of my recent acquisitions. **Although the photographer is unknown**, I do know RS-1 #1014 is in Anchorage on a warm summer day in July of 1972. This locomotive was built in 1943 for the US Army #8045. The Alaska Railroad acquired it in 1947. It was retired in 1970 and was to become Mate 3. It was scrapped in 1973."

On information and belief, this shows a pattern of reckless and willful behavior. Combs only purchased a slide NOT THE COPYRIGHT REGISTRATION AND LICENSE by evidence of the fact that Combs says, "the photographer is unknown." Only the creator or the heirs of a registered copyright can convey a copyright registration and license and it must be in writing. Combs knew or should have known failure to properly vet EVERY photograph; graphic; logo; drawing etc. BEFORE he posted it violates the Copyright Act, 17 U.S.C§501, et seq., 17 U.S.C§504(c), Section 106 of the Copyright Act of 1976, Title 17 of the United States Code, the Digital Millennium Act; the Berne Convention and the statutes and laws of the State of Alaska. (**Exhibit 5, 6 and 7**).

29) On information and belief, Combs FAILED TO EXERCISE A DUTY OF CARE and Due Diligence. Proof beyond a shadow of a doubt of Comb's contributory infringement and knowledge of copyright requirements and responsibility lies in the copyright disclosure Combs

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 11 of 29

personally posted on the Home Page of the Alaskarails.org Website. *All photos and graphics on the web site are protected Intellectual property.*" (Exhibit 2)

 **30) Combs posted "Stand Off" despite an objectively high likelihood that his actions constituted copyright infringement of the Plaintiff's copyright with conscious disregard of the risk even though Combs knew his actions were in violation of the Copyright Act of 1976 or should have known, which shows his reckless behavior and willful disregard for the law and copyrighted intellectual property, Combs posted at will! 17 U.S.C. § 504(c). *Although the statute does not define willful, it has consistently been defined it as including reckless behavior.***

 On information and belief, Combs and Ferguson pirated the Plaintiff's copyrighted intellectual property. A person(s) are liable for copyright infringement by another if the person knows or should have known of the infringement activity and [induces] [causes] [or] [materially contributes to] the activity.] Anyone who [reproduces] [prepares derivative works from] [distributes] [performs] [displays] a copyright work without authority form the copyright owner during the term of the copyright, infringes the copyright. [Copyright may also be infringed by [vicariously infringing] [and] [contributorily infringing].]

 31) On information and belief, Combs asserted copyright protection for the *thousands* of photographs, graphics, drawings, etc.; the Alaska Railroad Corporation Logos, etc. and other copyrighted intellectual property posted on John's Alaska Railroad Web Page Website. Acknowledging the source of the copyrighted material even if known, does not substitute for obtaining prior written permission and license under the Copyright Act to post it.

 32) On information and belief, Ferguson admits to coping and reproducing the horizontal postcard of "Stand Off." The reproduction of the original was distorted; appears with black edging around the outside of the original postcard; and was done without written consent and license of

the Copyright Owner. Ferguson made a derivative work. The defendants violated the Digital Millennium Copyright Act by changing and deleting the copyright management information. **(Exhibit 2, NOTE:** The Exhibit is printed in black and white because the Plaintiff's printer setting was not set to full color in 2013 when the screen print was made however "Stand Off" appeared in full color on John's Alaska Railroad Web Page Website.)

33) Although the Plaintiff's products were available for sale in the public domain, they were protected under her copyright notice that was featured on every product individually along with an ISBN number including the postcard which Ferguson purchased, scanned and sent to Combs. *All photographs and products "available to the public" carried the Plaintiff's copyright notice, photo credit and contact information.* Purchasing a postcard of "Stand Off" didn't give Ferguson or Combs the right to use it in any way whether as a screensaver on a pc, posting it to the internet or printing it, etc. *At all times relevant to this action, the Plaintiff was and is the sole and exclusive owner of all right, title and interest in and to the copyright in the image, "Stand Off."*

34) The owner of the copyright is the one who gets to say whether anybody else gets to use the work or not and at what price! The defendants infringed a registered copyright! It is an industry standard established by the American Society of Magazine Photographers (ASMP) that failure to give photo credit results in a penalty assessed by ten times the amount of the original invoice. The purpose of this is to detour clients from failing to post proper photo attribution and copyright notice.

35) If you put bait in the water, sharks will show up and they did! On information and belief, the defendants knew or had reason to know they were infringing a copyrighted work and

actively participated in inducing, causing and contributing to the third party copyright infringement and piracy in Case No.: 3:12-cv-00095-SLG.

36) The Plaintiff sent the defendants an Invoice on 27 August 2013 for retroactive licensing fees. The defendants hired B. Joseph Schaeff of Dayton, OH to respond to the Plaintiff on **6 September 2013**. Defendants refused to pay retroactive license fees to the Plaintiff for the unauthorized use of the copyrighted image entitled, "Stand Off," and internet display of 13 years.

37) Under the Copyright Act of 1976, the Plaintiff, creator, owner, and photographer's copyright is "vested," upon the act of creating and photographing "Stand Off."

50) The "copyright" is created when the creation of a work originates with the artist/Plaintiff. A work is automatically protected by copyright when it is created. A work is "created," when it is "fixed" in a copy or phono record for the first time. Neither registration in the Copyright Office nor publication is required for copyright protection, *emphasis added*.

39) "Stand Off" is an original work of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device, and as such is protected by copyright.

40) At all times relevant to this action, the Plaintiff was the sole and exclusive owner of all right, title, and interest in and to the copyright in "Stand Off."

41) The Plaintiff's products carried notice of copyright, photograph name, caption, description and creator's name with contact information. Before 1 March 1989, use of the copyright notice was mandatory on all published works, and for any first published before that date. After 1 March 1989, use of the copyright notice became optional. However, to ensure protection of copyright and photo attribution, all products carried the copyright notice, name and contact information. Copyrights protect "pictorial, graphic, and sculptural works," which include

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 14 of 29

two dimensional and three dimensional works of fine, graphic, and applied art. This includes but not limited to photographs and photomontages, etc.

The copyright of the artist's work endures for the artist's life plus 70 years. A copyright is a distinct property right or interest *that only transfers by written assignment* (except for works of hire.) A copyright is exclusive to the creator of the work. The Plaintiff photographed, created, designed and produced a Made In Alaska product line which included postcards however, she still owned the copyright to the works published in the product line even though they were in the public domain. Person(s) purchasing the products do NOT have the right to replicate, make derivative works or convey license to them.

42) Ownership of a valid copyright is established by proving (i) the originality and copyright ability of the material, and (ii) compliance with the statutory formalities. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995); *Cantrell*, 85 F.Supp.2d at 682. The Copyright Act defines the scope of copyright protection: "Copyright protection subsists...in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a) (emphasis added). Thus a work must be original to the author in order to be protected. *See Feist Publications*, 499 U.S. at 344 ("Originality is a constitutionally mandated prerequisite for copyright protection."). The term "original" as used in copyright law simply means (i) that the work was independently created by the author (as opposed to copied from other works), and (ii) that it possesses at least some minimal degree of creativity. *Feist Publications*, 499 U.S. at 351.

43) The Plaintiff e-mailed Combs on 9 July 2013 at 1:05 p.m. and suggested that Combs mitigate any further harm to other copyrighted works on the Website by doing the following:

A) Send an e-mail to all Website participants requesting that they send proof that all images they sent in for post are copyrighted intellectual work that they own.

B) Remove any posts from participants that don't comply to mitigate liability.

On information and belief, Combs hasn't deleted photographic posts where photographers remain listed as "Unknown, Unverified, ??? and Anonymous" because **Exhibit 5** contains 49 active examples still on display that were documented August 2016. **(Exhibit 5 and 10)**

44) Under the Digital Millennium Copyright Act "the operator of the Website" **must remove** copyrighted material and content used without license WHEN HE BECOMES AWARE OR RECEIVES NOTICE.

45) The defendants hired B. Joseph Schaeff of Dayton, OH to respond to the Plaintiff on **6 September 2013**. "Stand Off" was protected under the Copyright Act *upon creation of the work*. Evidence which disputes the defendant's "Fair Use" assertion and proves the Defendants infringed the copyrighted work is on information and belief:

**The purpose and character of the use:**

- Alaskarails.org is NOT a nonprofit academic educational institution, library, or archive.

- Combs was not acting within the scope of paid employment as an academic educational institution employee when he posted "Stand Off" on the Website.

- Alaskarails.org is a "railfan" Website similar to that of Facebook, focused on posting railfan memorabilia and events.

- There was NO EDUCATIONAL VALUE posted with the photograph of "Stand Off" aka "Moose of the tracks" because it was absent a caption that may have conveyed some "educational and/or historic" information.

- In the Website post of "Stand Off" aka "Moose of the tracks," there was absolutely no comment, information, teaching, news reporting, research or explanation as to what the

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 16 of 29

viewer was looking at in the picture or explanation about the event and true historic nature of the photograph "Stand Off."

**In the absence of a caption of the derivative work entitled, "Moose of the tracks," aka "Stand Off" the post *does not educate or advance any knowledge* about this truly historic event.** The viewer just sees a photograph. Most likely the number one question on a viewer's mind was, "Did the train hit the moose?" because there was no information to explain, what exactly a viewer is looking at.

46) On the prior page titled "2000 Pictures of the Week" description of the photograph only says, "Moose of the tracks." The "photograph title/description" is neither educational nor historical.

47) Most noteworthy of all is that Combs posted "Stand Off" under "2000 Pictures of the Week" not under the "Historical Features" link on the Website although Ferguson and Combs assert "they intended it ("Stand Off") for educational and/or historical purposes." This shows their assertion that the "intended purpose was educational and/or historical," as ABSOLUTELY FALSE and just a pretense to hide the real fact that they pirated "Stand Off." The placement of the posting of "Stand Off" on the Website speaks volumes because Combs didn't post it under a Website link with any "educational and/or historical" significance or reference. Combs posted it under "2000 Pictures of the Week" the participant's memorabilia "railfan" section.

Here is a direct quote from the page that shows the "2000 Picture of the Week" is a platform for "railfans" to relive times on the railroad similar to that of Facebook.

"Welcome to the Alaska Railroad Picture of the Week archives. A photograph is truly worth a thousand words. The Picture of the Week page began on February 16, 1998 with Jeff Child's photo of the Alaska Railroad's first locomotive, number 1. Since that time, professional

photographers, railfans, Alaska Railroad employees, historians and passengers have sent a multitude of prints, slides, scanned photographs and digital photographs. Unfortunately, I can only post a fraction of what I receive due to lack of time. Sit back, relax and enjoy!"

48) **See EXHIBIT 9,** the only Moose "*history or education*" on John's Alaska Railroad Web Page, is found in, "*Alaska Railroad Stories,*" http://www.alaskarails.org/stories/ARR-stories.html and "*Historical Highlights*" http://www.alaskarails.org/ARR-history.html. Viewers click the link in the section entitled, "Moose."

Combs states, "On this page you will find a collection of interesting, *non-fictional stories* about the Alaska Railroad. *Copyrights to these stories belong to their authors.* Feel free to email me any stories you would like to share. Enjoy!"

49) Excerpt from "*Alaska Railroad Stories*" under the tab, Moose by, © 1998 Frank Dewey post: "Each year 500-1000 moose are killed on Alaska's roads and railways. The heavier the snow, the higher the number of fatalities. *During Alaska's worst year (1989-1990),* 749 moose were killed by the railroad, 1200 by highway traffic and 4400 starved to death in the Matanuska-Susitna Valley."

Under "*Historical Highlights*" the winter of 1989-1990 when more than 800 moose were killed by the ARRC in a single winter, the death toll caused by the ARRC is barely mentioned even though Ferguson asserts in his written statement that, "It was intended to be used as a Historical picture for the alaskarails.org Website, this Website is better known as John's Alaska Railroad web page. ...The intended educational purpose was the Alaska Railroad history and the moose use the tracks as easier passage to get where they want to go."

On information and belief, the section of "Moose Stories" shows that Combs and Ferguson KNEW the value of "Stand Off" because the moose stories are dated beginning in 1998, TWO

FULL YEARS BEFORE Combs posted "Stand Off" on 05/22/2000. The defendants are a railroad fanatics and don't miss railroad events. "

50) "Stand Off" was photographed by the Plaintiff in March 1990 and published world-wide. It became an iconic photograph depicting the plight of starving Moose in Alaska and the grave risk Moose faced when walking on the railroad tracks, crossing bridges etc. to conserve energy because hundreds of Moose were hit and killed by the ARRC monthly!

51) Absent a caption "*educating or advancing knowledge*" the viewer can not conclude the purpose and character of the use of "Stand Off," is educational or historical. This isn't "Fair Use," its PIRACY! **(Exhibit 3)**

52) **The nature of the copyrighted work:** Under the Copyright Act, highly creative works and art of really pure expression *enjoy greater protection*. Copyright laws favor the right of the copyright owners (including heirs) to make the decision whether or not to publish their work and that includes choosing whom to license it to.

53) The Plaintiff is the photographer, creator and exclusive owner of the copyrighted intellectual property. *Under the Copyright Act of 1976, the Plaintiff, creator, owner, and photographer's copyright was "vested," upon the act of creating and photographing "Stand Off."* The "copyright" is created when the creation of a work originates with the artist/Plaintiff. A work is automatically protected by copyright when it is created. A work is "created," when it is "fixed" in a copy or phono record for the first time. **Neither registration in the Copyright Office nor publication is required for copyright protection,** *emphasis added.* The Alaskarails.org posting of "Stand Off" was not "transformative.

54) "Stand Off" was pirated by another third party from the Alaskarails.org Website for commercial use. Combs and Ferguson pirated and infringed a copyrighted and registered

intellectual work and caused adverse impact. The Defendants vicariously and contributorily infringed and aided a third parties copyright infringement of "Stand Off" too.

55) **The amount and substantiality of the portion used in relation to the copyrighted work as a whole:** On information and belief, the defendants posted 100% of the original horizontal postcard of the copyrighted photograph and expression of the work entitled, "Stand Off" Moose v Alaska Railroad aka "Moose of the tracks." **The infringement is more than de minimus and used the *"heart of the work/photograph."* Exhibit 1 and Exhibit 2** show a substantial amount and a legally cognizable appropriation. There are no disparities between the Alaskarails.org post entitled, "Moose of the tracks" and that of the copyrighted horizontal postcard photograph of "Stand Off" Hence, any "ordinary observer" would conclude the photographs are substantially the same photograph and are of "the heart of the work." The Defendants wrongly copied the plaintiff's protected expression which any reasonable lay observer would cause to immediately detect and conclude the substantial similarities between the plaintiff's expression of "Stand Off" and the defendants posting of "Moose of the tracks" without any aid or suggestion from others. Therefore, the "total concept and feel" of the work remains substantially the same and not a de Minimis use.

56) The defendants can still be an infringer even if he unintentionally copied the plaintiff's work. This is true even if the defendants were only subconsciously aware of the work after unknowingly observing it years prior to creating the allegedly infringing work. Courts have held that when two works are so strikingly similar as to preclude any reasonable possibility that the defendants' work was independently created, access may be presumed. To be "striking," the similarities must be such that they can only be explained through copying, as opposed to independent creation. [1- 6] A copyright infringement action requires a plaintiff to prove (1)

Ownership of a valid copyright, and (2) actionable copying by the defendants of constituent elements of the work that are original. [7-9].

57) ***The effect of the use upon the potential market for, or value of, the copyrighted work: An important factor of "Fair Use" is whether the use deprives the copyright owner of income or undermines a new or potential market for the copyrighted work.*** (Rogers v Koons, 960 F.2d 301 (2d Cir.1992).)

In Harper & Row Publishers Inc. v Nation Enters, 471 U.S. 539 (1985), the Supreme Court labeled this factor, "The effect of the use upon the potential market for, or value of, the copyrighted work," as the <u>"single most important element of fair use"</u> and it's had a level of primacy in fair use analyses ever since.

In evaluating the fourth factor, courts consider the harm to the potential market of the original work. First, whether the use in question acts as a direct market substitute for the original work. In the judgment of the Supreme Court in Acuff-Rose Music they decisively stated that, "when a commercial use amounts to mere duplication of the entirety of the original, it clearly supersedes the object of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur."

--------------------------------------------------------------------------------
[1] *See* Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

[2] Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946).

[3] *See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[E] (2011).

[4] *Compare* Nimmer, *supra* note 3, § 13.03[E][2] (criticizing the audience test as having always been improperly applied to works as a whole without first dissecting and filtering them) *with* 2 Paul Goldstein, Goldstein on Copyright § 9.3.1 (3d ed. 2011) (characterizing the audience test as traditionally only analyzing those protected elements of the plaintiff's work left following dissection and filtration of all unoriginal and non-copyrightable subject matter from the work).

[5] *See* Goldstein, *supra* note 4, § 9.3.1; Joshua M. Dalton and Sara Cable, *The Copyright The defendants Guide to Disproving Substantial Similarity on Summary Judgment*, Landslide, July/August 2011, at 26-29.

[6] *See* Goldstein, *supra* note 4, § 9.3.1; Nimmer, *supra* note 3, § 13.03[E].

[7] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)

[8] *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004)

[9] *R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 682 (S.D. Tex. 2000).

58) On information and belief, the Plaintiff's business was harmed and negatively impacted the value of "Stand Off," a once-in-a-lifetime, iconic photograph because the defendants in Case No.: 3:12-cv-00095-SLG pirated "Stand Off" from the Alaskarails.org Website and used it for commercial gain. Alaskarails.org made "Stand Off" available to anyone in the public to market or use without prior written license and payment and caused adverse impact to the Plaintiff.

59) On information and belief, Alaskarails.org adversely and negatively impacted the Plaintiff's market, business and value of the original copyrighted work entitled, "Stand Off" even though the Alaskarails.org Website itself is non-commercial, because they willfully posted "Stand Off" without copyright notice, correct photo attribution, without prior written license and caption even thought there was a high likelihood their actions could cause harm.

60) In the L.A. Times v Free Republic, the judge held *"while defendants' do not necessarily 'exploit' the articles for commercial gain, their posting to the Free Republic site allows defendants and other visitors to avoid paying the 'customary price' charged for the works."*

61) This copyright infringement prima facie case includes the undisputed admissions by the defendants. "Stand Off" is a copyrighted and registered intellectual property exclusive to the Plaintiff. The defendants recklessly and willfully copied and posted a substantial amount of "Stand Off*" using the "heart of the work*," and negatively impacted the Plaintiff's business earnings and the value of the original photograph entitled, "Stand Off." This wasn't fair use, its serial copyright infringement and piracy! The defendants willfully and knowingly failed to comply with legal requirements even though they're both photographers and know the Digital Millennium and Federal Copyright Act as evidenced in the Exhibits presented herein and by the Defendant's copyright notice posted on their own photographs displayed on the Website; the copyright notice

to participants regarding the Alaska Railroad Corporate Logo and the copyright disclosure about intellectual copyrighted work contained in the Alaskarails.org Website discussing same.

62) The Defendants violated the Plaintiff's rights under the provisions of the Digital Millennium Copyright Act, including 17 U.S.C. §1201 et seq., and in particular violated the prohibitions of 17 U.S.C. §1202, 17 U.S.C. §504 & 505 (penalties for willful infringement and attorney fees) by providing, distributing and importing false copyright management information, and by their unauthorized, intentional removal and/or alteration of Plaintiff's copyright management information; failure to provide copyright notice and proper photo attribution under the Copyright Act (1976) §507(b), 17 U.S.C. §101 et seq. The Court has jurisdiction pursuant to 28 U.S.C. 1350(a).

## FIRST CAUSE OF ACTION

### Copyright Infringement – 17 U.S.C. §§101 et seq. (Defendants)

63) Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above.

64) On information and belief, Defendants had access to the image when Ferguson purchased the postcard entitled "Stand Off," copied, reproduced and e-mailed it to Combs. Combs posted "Stand Off" on the Internet via the 2000 Pictures of the week on 22 May 2000 from the Alaskarails.org Website railfan participant section.

65) Defendant's reproduction and display of "Moose of the tracks" is substantially similar to the Plaintiff's image of "Stand Off" and uses the "heart of the work," which is protected by copyright.

66) Defendants failed to post "Stand Off" with copyright notice, correct photo attribution and prior written license.

67) Defendants deleted and mismanaged the Plaintiff's copyright management information.

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 23 of 29

68) Defendants have not compensated Plaintiff for the retroactive licensing fees for reproduction, utilization, display of 'Stand Off," failure to post photo attribution, copyright notice, making a derivative work and causing "Stand Off" to be pirated.

69) Defendants reproduced and publically displayed the Plaintiff's image "Stand Off" without prior written license, payment and authorization in violation of 17 U.S.C. § 501.

70) Defendants' conduct violates the exclusive rights belonging to the Plaintiff as the owner and creator of the copyrighted image, "Stand Off," including without limitation, Plaintiff's exclusive rights under 17 U.S.C. §1201 et seq., 17 U.S.C. §1202, & 17 U.S.C. §`106.

71) Plaintiff discovered usage and billed Defendants' reproduction, display and distribution of "Stand Off." Defendants' Counsel responded 6 September 2013. Defendants refused to remit payment of the Invoice. Plaintiff's claim is within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b).

72) As a direct result of Defendant's actions the Plaintiff suffered an adverse effect of the use upon the potential market for, or value of, the copyrighted work which deprived the Plaintiff of income and undermined a new or potential market for the copyrighted work, causing financial harm to her business, and professional reputation. While these Defendants' didn't necessarily 'exploit' "Stand Off" for commercial gain, their unauthorized posting of "Stand Off" to the Alaskarails.org Website allowed the Defendants in Case No.: 3:12-cv-00095-SLG to pirate it and use it for commercial gain. The Defendants themselves displayed it too and avoided paying the 'customary price' and license charged for the work for **13 full years**. (Dates: 05/22/2000-07/07/2013)

73) The Defendants allowed the public to obtain "Stand Off" at no cost that would otherwise have paid in a licensed agreement issued by the copyright owner. Accordingly, Plaintiff

seeks an award of actual damages and profits against Defendants plus attorneys' fees and cost pursuant to 17 U.S.C. §§ 504(b) and 505.

74) In the alternative, Plaintiff is entitled to and seeks statutory damages against the Defendants for the wrongful, willful conduct, including attorneys' fees and costs pursuant to 17 U.S.C. §§ 504(b) and 505.

75) Defendants' infringement of "Stand Off" was willful, performed with knowledge that the reproduction and display of "Stand Off" was unauthorized; Plaintiff is therefore entitled to the recovery of enhanced statutory damages pursuant to U.S.C. § 504(c)(2).

76) The defendants knew or had reason to know they were infringing a copyrighted work and actively participated in inducing, causing and contributing to the third party copyright infringement in Case No.: 3:12-cv-00095-SLG, pursuant to 17 U.S.C. §1201 et seq., 17 U.S.C. §1202, & 17 U.S.C. §`106.

## SECOND CAUSE OF ACTION

**Vicarious and Contributory Liability (John Combs)**

77) Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above.

78) Under the Digital Millennium Copyright Act and Federal Copyright Act of 1976, Combs had a legal duty as owner and webmaster of Alaskarails.org, to vet "Stand Off" upon receipt of the e-mail before posting it to the Website. Combs had a legal duty to stop or limit directly infringing conduct from Ferguson as well as take immediate action when he learned or had reason to believe he should not post a copyrighted intellectual work. That includes any image posted with incorrect photo attribution and posted as "Unknown, Unverified, ??? or anonymous."

79) Combs caused adverse impact and liability to the Plaintiff by posting "Stand Off" because it was pirated from Alaskarails.org for commercial gain.

80) As a direct and proximate result of Combs contributory and vicarious infringement described above, the Plaintiff suffered injuries and damage. Coping, reproducing, pasting and posting has consequences. Exhibit 5 shows 49 ACTIVE posts where Combs lists photographers as, "Unknown, Unverified, ???, and anonymous" which he uploaded as webmaster and owner of the Website. Combs has total control of all material and content posted on Alaskarails.org. In addition to this case brought by the Plaintiff, Exhibit 5 has 49 active examples that establish a documented pattern of willful and reckless behavior. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiffs' rights and copyrighted intellectual works posted without authorization and license.

The Defendants were complicit and violated the Plaintiff's rights under the provisions of the Digital Millennium Copyright Act, including 17 U.S.C. §1201 et seq., and in particular violated the prohibitions of 17 U.S.C. §1202, 17 U.S.C. §504 & 505 (penalties for willful infringement and attorney fees) by providing, distributing and importing false copyright management information, and by their unauthorized, intentional removal and/or alteration of Plaintiff's copyright management information; failure to provide copyright notice and proper photo attribution under the Copyright Act (1976) §507(b), 17 U.S.C. §101 et seq. The Court has jurisdiction pursuant to 28 U.S.C. 1350(a).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants, and each of them jointly and severally, as from this Honorable Court as follows:

Case 3:16-cv-00196-RRB   Document 1   Filed 08/30/16   Page 26 of 29

81) The Defendant's unauthorized conduct violates Plaintiff's rights under the Federal Copyright Act of 1976 and Digital Millennium Copyright Act;

82) The Defendants recklessly and willfully infringed Plaintiff's rights to "Stand Off" under the Federal Copyright Act of 1976 and Digital Millennium Copyright Act;

83) that Combs is contributorily, vicariously and directly liable for the direct infringement of Plaintiff's copyrights in "Stand Off";

84) that Defendants be ordered to pay Plaintiff for all losses, damages, in such amount as may be found pursuant to 17 U.S.C. § 504(c)(2) et seq. and 505, and 17 USC §1202 at the highest legal rate for the infringement of "Stand Off";

85) in the alternative, if Plaintiff so elects, that Defendants be required to pay Plaintiff the maximum punitive and statutory damages in the amount of $150,000 for each infringement pursuant to 17 U.S.C. § 504(c)(1) and (2) or such other amount as may be proper pursuant to 17 U.S.C. § 504; Remedies for Infringement: Damages and profits (3)(d); and for willful infringement. **17 U.S.C. § 504(c). Although the statute does not define willful, <u>it has consistently been defined as including reckless behavior.</u>**

86) that Defendants be required to pay Plaintiff its costs, reasonable attorneys' fees, and disbursements in this action, pursuant to 17 U.S.C. § 505;

87) that the Defendants are subject to preliminary and permanent injunctions providing that each Defendant shall deliver to the Plaintiff all copies of "Stand Off," and all other materials containing such infringing copies in each Defendant's possession, custody or control for destruction § 503. Remedies for infringement: Impounding and disposition of infringing articles (3)(b). The Plaintiff requests the Court to consider having the Website taken down until Combs can show that all photographs, drawings, sketches, stories, etc. are properly credited to the

copyright owners and the copyrighted work of those listed is proper and can show proof of copyright ownership and authorization to display them.

88) that the Defendants, their agents, and servants be enjoined during the pendency of this action; and permanently, from infringing the copyrights of the Plaintiff in any manner and from selling, publishing, marketing, displaying or otherwise using any copies of "Stand Off" including any and all digital or electronic copies of "Stand Off";

89) for prejudgment and post-judgement interest, and all costs of court; and

90) for such other and further relief as the Court deems just and equitable.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. The Plaintiff gives notice to the Court that the above mentioned facts and attached Exhibits filed with the Court are true and correct to the best of her knowledge and are presented as plausible on their face. Respectfully submitted this day:

/s/ Mi'chelle A. Barnes, *ProSe*                                29 August 2016

By:  /s/ Mi'chelle A. Barnes
139 Sierra Heights Street
Soldotna, AK 99669-7868
Cell: 907.250.7575
E: grizzlyclassicsofalaska@gmail.com

PRIORITY MAIL

*USED INTERNATIONALLY,
USTOMS DECLARATION
EL MAY BE REQUIRED.

DATE OF DELIVERY SPECIFIED *

USPS TRACKING™ INCLUDED *

INSURANCE INCLUDED *

PICKUP AVAILABLE

* Domestic only

## UNITED STATES POSTAL SERVICE ® — Click-N-Ship®

**P**

usps.com
$6.45
US POSTAGE
Flat Rate Env

9405 8036 9930 0300 6565 18 0064 5000 0019 9513

08/29/2016        Mailed from 99669        062S0000000309

### PRIORITY MAIL 2-DAY™

MI'CHELLE A BARNES                    Expected Delivery Date: 08/31/16
GRIZZLY CLASSICS OF ALASKA
139 SIERRA HEIGHTS ST                 **0006**
SOLDOTNA AK 99669-7868

**C083**

SHIP
TO:

US DISTRICT COURT
222 W 7TH AVE STOP 4
**ANCHORAGE AK 99513-7504**

### USPS TRACKING #



9405 8036 9930 0300 6565 18

Electronic Rate Approved #038555749

ing is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may b a
violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service, July 2013; All rights reserved.